IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
CHERLI A. MONTGOMERY,              )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   No. 07 C 4433
                                   )
JOHN E. POTTER, Postmaster General,)
United States Postal Service,      )
                                   )
        Defendant.                 )
```

**MEMORANDUM OPINION AND ORDER**

Cherli Montgomery ("Montgomery"), a United States Postal Service ("USPS") employee, was terminated in 2006 and is suing USPS for alleged race discrimination, sex discrimination, and retaliation. USPS moves for summary judgment on all claims, arguing that Montgomery 1) cannot prove a *prima facie* case of race discrimination or retaliation, 2) cannot show the stated reason for terminating her employment was pretext, and 3) failed to exhaust administrative remedies with respect to her sex discrimination claim. For the following reasons, USPS's motion is granted.

I.

Montgomery, a black female, worked as a registry clerk for USPS in Aurora, Illinois. Her office distributes all incoming and outgoing mail for forty-four postal stations ("associate offices") within the 605__ zip code. Montgomery and Lori Sall ("Sall"), a white female, processed registered mail on tour 1 - the shift from 11:00 p.m. until 7:00 a.m. Roger Gordon, a white male, and Renee

Domouges, Arteria Lovett, Diane McKay, Barbara Broach, and Kim Hunt, all black females, worked as backup registry clerks on tour 1 when Montgomery or Sall were unavailable.  The registry clerks were supervised by Quintin Mayberry, a black male, who reported to Samuel Fuller, the tour 1 manager of distribution operations, also a black male, who in turn reported to the plant manager, Gail Banks, a black female.

Processing registered mail entails 1) separating all incoming registered mail by destination postal station; 2) documenting the mail on a dispatch sheet; 3) placing the mail with its related dispatch sheet in a white canvas bag; 4) locking the bag; and 5) delivering the bag to the dock for further transport and delivery. Two types of locks are available to secure white canvas registered mail bags – rotary locks and tin seals.  Rotary locks are reusable and can only be opened with a key.  Tin seals are thin metal disposable bands that must be cut before the bags can be opened.

In January of 2006, USPS management directed the registry clerks to use rotary locks in lieu of tin seals for securing registered mail bags.  Six of the forty-four associate offices can not open rotary locks, so tin seals were exclusively authorized for dispatches to those six offices.  USPS records show that Sall and the backup registry clerks all abided by the directive, while Montgomery continued to use tin seals on all dispatches to all associate offices, even after she was repeatedly reminded that

rotary locks were to be used instead. Montgomery received varying types of progressive discipline for insubordination and her failure to abide by management's directive, including a warning letter, seven- and fourteen-day suspensions, and her eventual termination.

II.

Summary judgment is proper when the pleadings and discovery, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640 (7th Cir. 2008). The movant initially bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant has met this burden, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading," but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). I construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor

of that party. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).[1]

### III.

Under Title VII, a plaintiff can prove discrimination or retaliation either by presenting direct evidence of such discrimination or retaliation, or by the *McDonnell Douglas* burden-shifting approach (the "indirect method"). *See Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). The parties in this case focus their arguments on the indirect method.

With respect to Montgomery's race discrimination claim, she can successfully establish her *prima facie* case through the indirect method if she shows that: (1) she is a member of a protected class; (2) she met legitimate job expectations; (3) she suffered an adverse employment action; and (4) other similarly situated, non-protected persons were treated more favorably. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591-92 (7th Cir. 2008). The presumption of discrimination created by establishing a *prima facie* case shifts the burden to USPS to produce a legitimate nondiscriminatory reason for its adverse employment

---

[1] Both parties took liberties with the local rules in their respective "undisputed" statements of fact, responses, and related replies. I have not considered any properly objected to portions of those filings. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger*, 529 F.3d 371, 382, n.2 (7th Cir. 2008)(noting that it is inappropriate to make legal arguments in Rule 56.1 statement of facts); *see also See Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) (district courts are "entitled to expect strict compliance with Local Rule 56.1").

decision. *Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009). If USPS rebuts the *prima facie* case, the burden then shifts back to Montgomery to show that the reasons proffered by the defendant are mere pretext. *Id*.

Montgomery's termination letter states that she was dismissed for "failure to follow instructions" regarding registry procedures. The letter cites two categories of instructions that were not properly followed - incorrect use of forms and repeated failure to follow the rotary lock directive in the face of progressive discipline. USPS agrees that there are material facts in dispute as to the first reason for termination regarding proper use of forms, but argues that Montgomery's repeated failure to follow the rotary lock directive serves as an independent basis for her termination. Montgomery does not disagree, therefore, I focus my analysis on this second reason for termination.

In support of its motion, USPS argues that Montgomery's insubordination and failure to abide by management's rotary lock directive despite numerous warnings and disciplinary action shows she failed to meet her employer's legitimate job expectations. In addition, because all the other tour 1 registry clerks obeyed the rotary lock directive and none were insubordinate to management, USPS contends none of the other clerks were "similarly situated."

Montgomery responds that she was properly performing her job but did not follow the rotary lock directive because 1) she never

5

received a formal memorandum on the rotary lock rule or formal training regarding the substitution of rotary locks for tin seals, 2) her attempts to use rotary locks were thwarted by a shortage of usable locks, and 3) she used green and orange bags in lieu of white bags, which can only be locked with tin seals.  These excuses for not following management's directive are not persuasive.

    First, there is no evidence that formal training or a formal written memorandum were required.  Montgomery does not contend that the other clerks received such training or notice, yet they all consistently complied with the directed change in procedure.  Second, Montgomery was supposed to use white bags that accepted the rotary lock, not green or orange bags, and there is no evidence that white bags were not available.  Therefore, using bags that would not allow compliance with the rotary lock rule appears to have been purely Montgomery's choice and not a special circumstance thrust upon her.  Finally, with respect to the availability of usable locks, the uncontradicted evidence shows rotary locks were generally available and that the other clerks had enough working locks on hand and complied with the directive.  But even assuming Montgomery did run into an occasional shortage of usable locks as she claims (and she does not argue they were never available), this does not explain why she continued to use tin seals when locks were available.  Accordingly, I find Montgomery cannot show she was meeting USPS's legitimate job expectations.  *See Williams v.*

*Airborne Exp., Inc.*, 521 F.3d 765, 768 (7th Cir. 2008)(plaintiff did not show he was meeting legitimate job expectations in light of repeated disciplinary action and insubordination).

Even if she could show she was meeting legitimate job expectations, Montgomery cannot show there were similarly situated employees who were treated more favorably. *See Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002). To demonstrate that another employee is "similarly situated," Montgomery must demonstrate that there is someone who is directly comparable to her in all material respects. *Id*. at 819. In other words, an employee who is substantially similar with respect to his/her performance, qualifications, and conduct, *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000), and who dealt with the same supervisors and was subject to the same standards. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).

Montgomery provides three examples of similarly situated employees she contends were treated more favorably than she was treated. First, she points to one instance when Sall incorrectly used an "LA" lock for a dispatch to an office that could not open such locks. Management instructed Sall not to use the "LA" lock again and she heeded that instruction, as Montgomery does not suggest the offense was repeated. There is no indication from the record that Sall ever used a tin seal when a rotary lock was required or that she was ever insubordinate to management. Sall's

7

one mistake is not comparable to Montgomery's repeated refusal to comply with the rotary lock directive in the face of escalating disciplinary action. No reasonable jury could find otherwise.

Second, Montgomery claims Mr. Kim (no race provided), a tour 3 registry clerk, and two or three other unnamed tour 3 clerks (no race provided), used tin seals over the same period of time but were not reprimanded. Tour 3 has different supervisors than tour 1 and dispatches mail to areas tour 1 does not, including banks and associate offices outside the 605__ zip code. At least some of these locations cannot open rotary locks, so tin seals were authorized. There is no evidence showing Mr. Kim and/or the other unnamed clerks used tin seals improperly. Montgomery has not met her burden in showing anyone on tour 3 was similarly situated.[2]

Third, Montgomery argues more generally that she "has reason to believe" clerks at some of the 44 other associate offices used tin seals and were not reprimanded. (Resp. at p. 4.) She provides no evidence supporting this speculative claim. In sum, Montgomery cannot point to any similarly situated employees who were treated more favorably than she was treated.

Montgomery's response includes several more allegations of discrimination, namely, that 1) she was overlooked for "employee of the month" awards while two white employees received the award for

---

[2] Even the basics are missing – Montgomery does not allege that Mr. Kim and the unnamed tour 3 clerks are not in her protected class.

what she perceived as "lesser efforts," 2) Sall repeated some information about Montgomery's medical condition publicly, 3) a security camera in her registry cage did not rotate while other security cameras did, and 4) Gordon told management that working with her was difficult. Plaintiff does not explain how these allegations fit into her case or why she believes they were racially motivated. Regardless, I assume these instances are noted as evidence of a hostile work environment, but find such a claim cannot survive summary judgment. *See e.g., Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008)(to be actionable, harassment must be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.")(citations omitted); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713-14 (7th Cir. 2004)(to support a Title VII claim, the conduct at issue must have a racial character or purpose); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998)(noting that offhand comments and isolated incidents cannot sustain a hostile work environment claim). Accordingly, defendant's motion is granted as to plaintiff's discrimination and hostile work environment claims.

IV.

Montgomery also blames her discipline and termination on retaliation for a previously filed an equal employment opportunity ("EEO") complaint. She claims Mayberry received a copy of the results of that complaint in January 2006, about the time the

9

alleged retaliation began.  The rest of her evidence is the same as that alleged in support of her discrimination claim.  Proving a *prima facie* case of retaliation under the indirect method of proof requires, among other things, a showing that Montgomery met legitimate job expectations and that similarly situated employees who did not engage in protected activities, like filing an EEO complaint, were treated more favorably than she was treated.  *See Sitar v. Ind. DOT*, 344 F.3d 720, 728 (7th Cir. 2003).  As previously discussed, Montgomery did not meet legitimate job expectations because she refused to comply with management's rotary lock directive after repeated reminders and escalating disciplinary action.  Additionally, Montgomery has not shown Sall, Mr. Kim, or any other registry clerk to be similarly situated.  Therefore, Montgomery cannot prove a *prima facie* case of retaliation.

V.

Regardless of Montgomery's ability to make a *prima facie* case of race discrimination and/or retaliation, her claims fail because she cannot prove the stated reason for firing her - failure to abide by the rotary lock rule - was pretextual.  The record shows Montgomery did, in fact, knowingly refuse to follow the rotary lock directive.  *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 (7th Cir. 2008) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee.  Rather, the only question is whether the employer's

10

proffered reason was pretextual, meaning that it was a lie.")(citations omitted); *see also Stringel v. Methodist Hosp.*, 89 F.3d 415, 418 (7th Cir. 1996) (insubordination is a legitimate reason for discharge). For this additional reason, Montgomery's discrimination and retaliation claims cannot withstand summary judgment.[3]

## VI.

With respect to Montgomery's gender discrimination claim, USPS argues that she has not exhausted her administrative remedies. Montgomery does not dispute this argument and the underlying EEO complaint shows only race discrimination and retaliation claims were pursued. Accordingly, USPS's motion is also granted as to this claim. *See McGoffney v. Vigo County Div. of Family and Children,* 389 F.3d 750, 752-53 (7th Cir. 2004)(explaining that Title VII plaintiffs are limited to claims included in EEOC charge).

---

[3] Montgomery does not argue that issues of fact as to the alternative reason for her termination relating to improper use of forms allow her claims to survive summary judgment despite the non-pretextual reason provided - repeated violations of the rotary lock directive. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008)(showing that one of defendants' reasons for an adverse employment action is pretextual is not enough, unless defendants' reasons are intertwined, or the pretextual character of one of them is so fishy or suspicious that plaintiff could withstand summary judgment).

VII.

For these stated reasons, USPS's motion for summary judgment is granted in full.  This case is dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Date:  October 13, 2009